[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and for other relief brought to the Superior Court for the Judicial District of New Haven.
Many of the underlying facts in this matter are not in dispute. The plaintiff and the defendant whose maiden name was Patricia Gail Butler were married in New Haven, Connecticut on October 21, 1989. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date of the complaint. The marriage between the parties has broken down irretrievably with no reasonable prospects of reconciliation. The plaintiff and the defendant have no minor children issue of their marriage. The defendant has no minor children born to her since the date of her marriage to the plaintiff. Neither party is currently receiving assistance from the State of Connecticut.
The plaintiff and the defendant met in 1984. They started to live together in 1986 or 1987. They lived together for more than one year prior to their marriage. The parties had a joint bank account and they took trips together prior to their marriage. The parties were living together when the family home at 310 Goodrich Street, Hamden, Connecticut was purchased. They were engaged to be married on the date the property was purchased. The title to the property was placed only in the name of the plaintiff due to credit problems that the defendant had. The closing on the property took place in May of 1989. The parties are in agreement that the $20,000.00 cash down payment towards the purchase of the home was provided from funds of the plaintiff. The parties are in dispute as to whether the remaining closing costs were paid by the plaintiff or by the defendant. From the evidence presented, this court finds that the defendant provided the cash for the balance of the closing costs of $3,305.32. The purchase price of the property was $95,000.00. The plaintiff obtained a $75,000.00 CT Page 4869 first mortgage that was used towards the purchase of the property. The present fair market value of the property is $82,000.00. The mortgage balance is $73,682.12. The equity is $8,317.88. In March of 1991, the plaintiff transferred a half interest in the family home to his daughter. He had decided to commence the present dissolution of marriage proceeding in February of 1991. The defendant has not requested that the transfer of the plaintiff's half interest to his daughter be satisfied as fraudulent. In determining the issues of alimony, property settlement, and counsel fees this court has considered the family home to be still fully owned by the plaintiff. During the month of May 1989, the defendant withdrew $5,850.00 from her personal savings account. The court finds from the evidence presented that that money was used towards the purchase of new furniture for the family home costing a total of $1,810.42 plus the closing costs of $3,305.32.
The defendant has two daughters who are not issue of the marriage and were not born during the period of the marriage to the plaintiff. The defendant does not receive any child support from the father of those two children and has never requested any support. The plaintiff was aware of this when the parties married.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, this court finds that each party is equally at fault for the cause of the breakdown of the marriage.
The plaintiff is employed as a mail carrier for the Postal Service. His average gross weekly is $674.00. He works a five day week from 7:00 a.m. to 3:30 p.m. and earns $14.50 per hour. He also has an $80.00 monthly VA disability as a result of service in Viet Nam. On July 15, 1991, his gross weekly income was $610.88. On February 29, 1992, his gross weekly income was $650.00. On March 9, 1992, his gross weekly income was increased to $674.57. His average gross weekly salary is $650.00. The increases were due to the fact that under the Fair Standard Labor Law he obtains a cost of living increase. As of October 1991, the plaintiff was employed for 22 years with the Postal Service. He has a pension plan that has a present value of approximately $24,000.00. He cannot withdraw funds from that plan until he is age 55. Plaintiff also has a parttime business selling fruits and vegetables and fish. He goes to New York to purchase the fish or purchases it from friends for resale. He conducts that parttime business on his days off and occasionally uses vacation time to conduct that business. He uses his truck in conducting that parttime business. From the evidence presented, the court finds that his average gross weekly income from that business is $75.00. He has expenses of paying for gas and insurance on the truck as CT Page 4870 well as the cost of maintenance and repairs and insurance on the truck. The defendant is employed as a factory worker U.S. Repeating. She works a five day week from 7:00 a.m. to 3:30 p.m. Her average gross weekly salary is $392.00.
During the time the defendant was married to the plaintiff, she informed him that she wanted to become a cosmotologist. The plaintiff agreed to that. The defendant commenced school to become cosmotologist in March of 1990. She attended cosmotology school from March of 1990 to May of 1991. The school is a two year program and she has not completed it. She has completed approximately 82% of the required school hours and can return to school whenever she wishes to complete her education.
During the period of time that the parties were married together the plaintiff owned various motor vehicles. He presently owns a Buick Riviera. On his July 1991 financial affidavit, he showed the value of that vehicle at $3,500.00. In his February 1992 affidavit, he showed the value of that vehicle as $2,500.00. In his March of 1992 affidavit he shows the value of the vehicle as $2,500.00. The parties are in dispute as to who operated the vehicle primarily during the period of the marriage. The court finds from the evidence that the plaintiff was the primary operator of that vehicle. The plaintiff also showed the value of the Buick Riviera in a credit application form dated November 18, 1991 as $5,000.00. The vehicle was shown as having that increased value from the July 1991 financial affidavit of $3,500.00 due to the plaintiff having spent approximately $1500.00 in doing motor and other repair work on the vehicle. The plaintiff uses the Buick Riviera to get to and from work. The court finds from the evidence presented, that the value of that vehicle at the present time is $3,500.00. The court further finds that the defendant contributed $500.00 from her own funds toward the purchase of the various vehicles owned by the plaintiff.
The plaintiff's financial affidavit dated March 9, 1992, shows the following liabilities:
CREDITOR (Do not include AMOUNT OF BALANCE DATE DEBT WEEKLY mortgages or loan DEBT DUE INCURRED PAYMENT balances that will be listed under assets) ------------------------------------------------------------------- United Carolina Bank $15,000 $12,000 9-87 $37.52 U.S. Postal Service Credit Union $15,000 $15,000 current $32.56 Advco Finance Co. $2,500 $2,000 current $21.63 New Haven Savings Bank $2,500 $1,400 1988 $16.28 Peoples Bank $3,000 $2,700 1988 $13.95 ------------------------------------------------------------------- CT Page 4871 TOTAL LIABILITIES (Total Balance Due $33,100 TOTAL WEEKLY on Debts) LIAB. EXP. $121.94
a The United Carolina Bank Loan.
The plaintiff in his financial affidavit of July 1991, showed the balance of that loan as $10,000.00 and in his financial affidavit of February 1992, showed the balance of that loan as $10,000.00. He is unable to explain how the balance increased from $10,000.00 to $12,000.00. The loan was for a mobile home that he purchased in 1987. That mobile home is shown under real estate in his March 9, 1992 financial affidavit.
b The U.S. Postal Service Credit Loan.
The purpose of that loan was to pay existing bills and finish work to be done in the basement at the home owned by the plaintiff. The plaintiff agrees that the defendant is not responsible for any part of that loan.
c The Advco Finance Company Loan.
That loan was taken for a trip that the plaintiff sponsored to Atlantic City for approximately forty-seven people to go to the various casinos located there. The plaintiff claims that a few hundred dollars of that loan was given to the defendant which the defendant denies. The court finds from the evidence presented that no part of that loan was given to the defendant. There is an addition of approximately $865.00 owed to the bus company for the trip to Atlantic City.
d The New Haven Savings Bank Loan.
That loan was incurred by the plaintiff prior to the marriage of the parties.
e The Peoples Bank Loan.
That loan was incurred by the plaintiff prior to the marriage of the parties. The plaintiff agrees that he should be solely responsible for the payment of that loan.
The defendant's financial affidavit dated March 9, 1992, shows the following liabilities:
CREDITOR (Do not include AMOUNT OF BALANCE DATE DEBT WEEKLY mortgages or loan DEBT DUE INCURRED PAYMENT balances that will be listed under assets) ------------------------------------------------------------------- CT Page 4872 Student Loan $2,600 $2,449.82 1992 $11.54 Dental Bills $710 $175 1991 $20 Discover Revolving $1,600 1991 0 Yale New Haven $7,000 $6,000 1991 $19.61 Hospital -------------------------------------------------------------------- TOTAL LIABILITIES (Total Balance Due $10,224.82 TOTAL $51.15 on Debts) WEEKLY LIAB. EXP.
a The Student Loan.
That loan was incurred by the defendant in connection with her attending the school to become a cosmotologist. In addition to that loan, there are other outstanding student loans by the defendant in connection with her attending cosmotology school.
b Dental Bills.
The dental bills were incurred on behalf of the defendant and/or her children.
c The Discover Bill.
That bill was incurred by the defendant.
d The Yale New Haven Hospital Bill.
That bill was incurred by the defendant on behalf of her daughter.
In addition to the bills listed by the defendant on her financial affidavit, she also owes approximately $460.00 in unpaid municipal taxes on an automobile that she owned prior to the marriage of the parties. She also owes a bill to Bradlee's, Inc. that was incurred by herself and also owes money to the Yale School of Medicine in connection with her daughter having been admitted for medical treatment there.
On July 1, 1991 an ex parte restraining order was granted in favor of the defendant restraining the plaintiff from entering the dwelling at 310 Goodrich Street, Hamden, Connecticut. That matter was assigned for hearing for July 15, 1991. On July 15, 1991, the defendant's motion for exclusive possession of the marital premises pendente lite was granted with the plaintiff being ordered to be responsible for the mortgage, taxes and insurance on the home as they come due. The defendant has occupied the family residence exclusively up to the present date.
This court has considered and weighed the factors set forth CT Page 4873 in 46b-86(c) in determining the issues of assignment of property and has considered and weighed the factors set forth in 46b-82 in determining alimony. This court has also considered and weighed the factors set forth in 46b-62 in determining whether to grant attorney's fees.
ORDER
The court hereby enters the following order:
I BY WAY OF DISSOLUTION.
The marriage of the parties to this action is hereby dissolved on the grounds of irretrievable breakdown and each of the parties are hereby declared to be single and unmarried.
II BY WAY OF PROPERTY SETTLEMENT.
1. The real estate at 310 Goodrich Street, Hamden, Connecticut and the mobile home at Route 3, Whitevile, North Carolina are awarded solely to the plaintiff.
2. All of the furniture and personal property at the family residence is awarded to the defendant other than for the TV, stove, freezer, and tools located in the basement consisting of power saws, shovels, rakes and hoses which are awarded to the plaintiff.
3. The defendant is to vacate the Hamden, Connecticut residence by June 30, 1992. She does not have to pay any rent relating to that use and occupancy. However, she is responsible for paying all utility bills that are outstanding at the residence as of the date she vacates. The plaintiff is solely responsible for the mortgage payments, tax payments and insurance payments for the Hamden, Connecticut residence and is to hold the defendant harmless therefrom.
3. The bonds being held in escrow by counsel for the defendant are ordered to be distributed as follows: The bonds dated October 1990, April 1991, March 1991, and January 1991 are assigned to the defendant and the plaintiff is to execute whatever documents are necessary to accomplish that assignment. The remaining bonds are assigned solely to the plaintiff. The bonds are to be released from escrow and turned over in accordance with this order on the first day of the first month after the defendant vacates the Hamden, Connecticut residence.
4. The motor vehicles, bank accounts, and compensation plan shown on the plaintiff's financial affidavit are awarded solely to the plaintiff. The credit union account and 522 shares of AM CT Page 4874 International shown on the defendant's financial affidavit are awarded solely to the defendant. Plaintiff is to pay all liabilities shown on his financial affidavit and in addition is to pay the following liabilities: debt due to bus company in connection with Atlantic City trip.
The defendant is to pay all liabilities shown on her financial affidavit and in addition is to pay the following liabilities: all loans in connection with cosmotology school, municipal motor vehicle taxes on her motor vehicle, Bradlee's, and Yale School of Medicine.
III BY WAY OF ALIMONY.
The plaintiff is ordered to pay to the defendant by way of alimony the sum of $5,200.00. Said $5,200.00 is to be paid at the rate of $400.00 monthly commencing on the first day of the first month after the defendant vacates the Hamden, Connecticut residence and then continuing monthly thereafter. Said $5,200.00 is to be without interest. Said alimony is nonmodifiable as to term or amount except that the full balance will become due and payable upon the death of the plaintiff or the defendant or the transfer of title of the Hamden, Connecticut residence. In accordance with the provisions of 46b-82, the court by way of security for the payment of alimony grants to the defendant a lien on the plaintiff's residence at 310 Goodrich Street, Hamden, Connecticut.
IV COUNSEL FEES.
No counsel fees are awarded in favor of either party.
AXELROD, JUDGE